## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF PRISONS and U.S. DEPARTMENT OF JUSTICE, <br><br> Defendants. | Civil Action No. 1:21-cv-6579 |

## COMPLAINT FOR INJUNCTIVE RELIEF

### INTRODUCTION

1.      This lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeks the immediate release of records from the Federal Bureau of Prisons ("BOP") concerning the digitization, retention, and surveillance of mail sent to individuals incarcerated in jails and prisons.

2.      For the over 150,000 individuals currently incarcerated in federal correctional facilities, the ability to send and receive mail is a lifeline. It connects them to loved ones, community members, educators, religious leaders, and social services. Amidst the COVID-19 pandemic, during which in-person visitation has been severely restricted or eliminated altogether, letter-writing is one of the few remaining forms of communication available to incarcerated individuals.

3.      But in March 2020, the same month the BOP halted in-person visitation due to the COVID-19 pandemic, the agency launched a pilot program that digitizes incoming mail. Under that program, a private telecommunications contractor called Smart Communications opens and

scans all non-privileged mail sent to at least two federal correctional facilities; the original letters, pictures, and photos are destroyed.

4.      The BOP's pilot program was intended to operate for one year, but the agency has not publicly disclosed the details of this program or its current status. For instance, it is unclear whether the pilot program remains operational beyond its original term and whether the BOP intends to permanently adopt a mail digitization system. The BOP has also not explained its policies on the retention, use, and sharing of data derived from digitized mail. It has not publicly updated its general correspondence policy to account for its changed mail procedures. It has not explained why it believes mail digitization efforts were necessary, nor has it disclosed any data to demonstrate the efficacy of the pilot program.

5.      Mail digitization efforts, like the BOP's pilot program, raise serious questions about the rights of incarcerated people and their loved ones. Smart Communications' program, called the MailGuard system, heightens the surveillance already prevalent in prisons and jails by digitizing and storing searchable copies of prison mail. This pervasive surveillance has already chilled the expression of members of the public who otherwise wish to send mail to people incarcerated in correctional facilities. These programs also make meaningful communication through correspondence more difficult. After the adoption of mail digitization measures, incarcerated people have reported long delays in receiving mail and incorrect copying, including distorted photographs, illegible letters, and lost pages.

6.      To help the public better understand the BOP's adoption of mail digitization programs, the extent of the BOP's surveillance and investigation of correspondence, and the impact of mail digitization programs on incarcerated individuals and the public, Plaintiff the Knight First Amendment Institute at Columbia University ("Plaintiff" or the "Knight Institute")

submitted a FOIA request ("the Request") to the BOP on June 25, 2021, seeking records concerning the digitization, retention, and surveillance of mail sent to individuals incarcerated in federal prisons.

7.      Plaintiff has commenced this action because Defendants failed to process and release records responsive to the Request within the timeline mandated by FOIA. Plaintiff seeks the injunctive relief necessary to ensure Defendants' compliance with FOIA's requirements.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

10.     The Knight First Amendment Institute at Columbia University is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education. Public education is essential to the Knight Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Knight Institute was established to conduct. The Knight Institute is a "person" within the meaning of 5 U.S.C. § 551(2).

11.     Defendant BOP is a component of the U.S. Department of Justice ("DOJ") and is an "agency" within the meaning of 5 U.S.C. § 552(f). The BOP has possession and control over the requested records.

12.     Defendant DOJ is a department of the executive branch of the U.S. government and is an "agency" within the meaning of 5 U.S.C. § 552(f). The DOJ and its component the BOP have possession and control over the requested records.

## FACTUAL ALLEGATIONS

### *Background*

13.     In March 2020, the BOP launched what was meant to be a one-year pilot program with the private, for-profit telecommunications contractor Smart Communications to begin digitizing all incoming non-legal mail in at least two federal correctional facilities: Federal Correctional Institution Beckley in West Virginia and United States Penitentiary Canaan in Pennsylvania. The BOP has stated that, under its pilot program, the original correspondence is retained for thirty days before being destroyed and is never shared with the intended recipient.

14.     Smart Communications creates and sells a product called MailGuard to client correctional facilities. Through the MailGuard system, postal mail sent to incarcerated persons is routed to an off-site facility outside the prison and is processed, scanned, and uploaded into a proprietary database accessible to correctional officers at client facilities. These officers can review and either approve or reject the incoming mail in the database. If approved, a photocopy of the correspondence is printed and delivered to the recipient. Smart Communications also provides a range of surveillance and investigative features to its MailGuard clients, including the ability to flag individuals for heighted surveillance by setting alerts that automatically forward investigators a copy of every letter sent to that individual.

15.     Smart Communications also markets a tool called the Smart Tracker that is designed to surveil those who send mail to incarcerated individuals. Smart Communications advertises the Smart Tracker tool as providing correctional officers with "significant new intelligence about the public sender of the postal mail, giving postal mail a digital fingerprint." Through this service, if senders of mail opt to track the status of their letters, Smart Communications will collect data about the senders, including their email addresses, physical addresses, IP addresses, phone numbers, and GPS locations. The Smart Tracker tool maintains a

profile on senders that contains this data, as well as copies of every letter they send through Smart Communications and a list of all of their "connections"—that is, every incarcerated individual with whom they have communicated.

16.     Smart Communications retains the data it collects for years, and possibly indefinitely, creating a searchable database of all correspondence that can be used to target and investigate both senders and recipients of mail. In late 2018, Jon Logan, the CEO of Smart Communications, specified that electronic copies of mail sent to at least one of its client facilities was retained for at least seven years after the recipient had been released from incarceration, if not longer. "[In] almost 10 years of business," he told a reporter for *Mother Jones*, "Smart Communications has never lost or deleted any records or any data from our database. There are hundreds of millions of data records stored for investigators at anytime."

17.     Early experiences with Smart Communications' MailGuard system suggest that the increased surveillance of mail impairs the ability of incarcerated individuals and their loved ones to communicate freely. In response to Pennsylvania's adoption of the MailGuard system in 2018, for example, the spouse of an incarcerated individual told a *Mother Jones* reporter that she will not "send any pictures to [her husband] that have faces of our children, our grandchildren," because he "wants no family faces saved in that database whatsoever." Another spouse interviewed by the *Philadelphia Inquirer* said she stopped sending her child's original artwork to her incarcerated husband.

18.     Additionally, incarcerated people have reported that the destruction of original mail further isolates them from their loved ones. After the adoption of mail digitization measures, incarcerated people have complained of long delays in receiving mail and incorrect copying, including distorted photographs, illegible letters, and lost pages. Even when mail is perfectly

scanned or copied, the destruction of original correspondence can weigh heavily on those incarcerated. For example, Gregory Marcinski, who has been incarcerated for almost 20 years, told a reporter for the *Daily Beast* that he could still smell the scent of his father's favorite cigarettes on the last letter he received before his father passed away in 2016. He treasures the ability to "see the ink that he used on that paper," especially as he can no longer receive original letters from his partner or her children.

19.     Prison rights advocates have also expressed concern about the status of privileged and confidential mail under mail digitization systems. Although legal mail is not supposed to be routed to Smart Communications under the BOP's pilot program, at least one incarcerated individual complained that legal mail sent to him was scanned and copied as well. And Just Detention International, a human rights organization, has argued that the system may be inconsistent with the national standards set under the Prison Rape Elimination Act requiring correctional facilities to "enable reasonable communication between inmates and [victim advocacy] organizations and agencies, in as confidential a manner as possible," 28 C.F.R. § 115.53(a).

20.     Smart Communications markets its service as a method of improving safety and security in correctional facilities, but it is unclear whether programs like the MailGuard system accomplish these goals. Pennsylvania adopted the MailGuard system in 2018 in response to the risk that incoming letters soaked in synthetic cannabinoids could be used to introduce contraband into prisons and jails and could sicken staff. But reporters at the *American Prospect* concluded, based on Pennsylvania's drug interdiction data, that the introduction of the MailGuard system did not lead to a decrease in the average drug test positivity rate.

21.     The BOP previously announced that it was considering extending and expanding the MailGuard pilot program, but it has not provided key information to the public about the pilot program, how it operates, or even whether it remains in place. It has not disclosed any policies on the collection or retention of data derived from correspondence that is stored in Smart Communications' database. It has not disclosed its policies on when or whether BOP employees or other law enforcement personnel may access data on Smart Communications' database for general investigative purposes. The BOP has likewise not disclosed whether it has received complaints about the mail digitization process, including delays in delivering mail, incorrect copying of mail, and any instances of copying of privileged legal mail or other confidential mail. Finally, the BOP has not disclosed any data demonstrating whether the MailGuard system has reduced contraband in federal jails and prisons, or data demonstrating the extent to which contraband is being introduced through general correspondence.

### *The FOIA Request*

22.     On June 25, 2021, the Knight Institute submitted the Request to the BOP, seeking records "concerning the digitization and retention of mail sent to individuals incarcerated in jails and prisons," including:[1]

    a.  Records regarding mail digitization systems[2] at correctional facilities;

    b.  All records concerning the retention of electronic copies of mail, or data derived from such mail;

    c.  All communications concerning the evaluation, expansion, extension, or termination of the MailGuard pilot program or other mail digitization efforts;

    d.  All records explaining or discussing the Bureau's rationale for launching the MailGuard pilot program;

---

[1] A true and correct copy of the Request is attached hereto as Exhibit A.

[2] The Knight Institute specified in the Request that, by "mail digitization system," it meant the MailGuard system, the Smart Tracker tool, and any other mail digitization efforts or proposals.

    e.   All records concerning the collection or retention of data about the senders of mail through mail digitization systems;

    f.   Records relating to the incidence of contraband introduction through the use of mail in jails and prisons;

    g.   All presentations, publications, training materials, pamphlets, press releases, or other documents explaining or providing guidance on mail digitization systems to Bureau of Prisons employees, incarcerated individuals, or members of the public;

    h.   All complaints or inquiries submitted regarding mail digitization systems, including but not limited to complaints about the copying of privileged or confidential mail, undelivered or late mail, rejected mail, poor photocopies, and the retention of mail sent to incarcerated individuals, and any responses to those complaints or inquiries;

    i.   All records relating to the use of tablets, kiosks, or other electronic means to access digitized mail by incarcerated individuals; and

    j.   All policies or procedures relating to the reading, retention, and copying of mail sent to incarcerated individuals, including both incoming mail and mail already in the possession of those individuals.

23.    The Knight Institute requested expedited processing of the Request on the ground that it is an organization "primarily engaged in disseminating information" and there is a "compelling need" for the records sought because they contain information "urgent[ly]" needed to "inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

24.    The Knight Institute requested a waiver of document search, review, and duplication fees on the grounds that: (a) disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," *id.* § 552(a)(4)(A)(iii); (b) the Knight Institute is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use, *id.* § 552(a)(4)(A)(ii)(II); and (c) the Knight Institute is an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use, *id.* § 552(a)(4)(A)(ii)(II).

*Agency Response*

25.     By letter dated June 29, 2021, the BOP acknowledged receipt of the Request by email and assigned it reference number 2021-05206.[3] The BOP granted the Knight Institute's request for expedited processing. It did not respond to the Knight Institute's request for a fee waiver.

26.     To date, the BOP has not released any records responsive to the Request or adequately explained its failure to do so.

## CAUSES OF ACTION

27.     Defendants' failure to process Plaintiff's request as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendants' corresponding regulations, 28 C.F.R. § 513.60 *et seq*.

28.     Defendants' failure to make records responsive to the Request promptly available violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), and Defendants' corresponding regulation, 28 C.F.R. § 513.60 *et seq*.

29.     Defendants' failure to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii), and Defendants' corresponding regulations, 28 C.F.R. § 513.60 *et seq*.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A.     Order Defendants to conduct a thorough search for records responsive to Plaintiff's request;

B.     Order Defendants to immediately process and release any responsive records;

---

[3] A true and correct copy of the BOP's acknowledgment is attached hereto as Exhibit B.

C.    Award Plaintiff its reasonable costs and attorneys' fees incurred in this action; and

D.    Grant such other and further relief as the Court may deem just and proper.


Respectfully submitted,

 /s/ *Stephanie Krent*
Stephanie Krent
Xiangnong Wang
Alex Abdo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
stephanie.krent@knightcolumbia.org

*Counsel for Plaintiff*

August 4, 2021